## 2384CV01584 Rauhaus Freedenfeld & Associates, Llp vs. Pets Doc Veterinary Clinic

Case Type:
**Contract / Business Cases**

Case Status:
**Open**

File Date
**07/12/2023**

DCM Track:
**A - Average**

Initiating Action:
**Construction Dispute**

Status Date:
**07/12/2023**

Case Judge:

Next Event:

**All Information**   **Party**   **Tickler**   **Docket**   **Disposition**

### Party Information

**Rauhaus Freedenfeld & Associates, Llp**
**- Plaintiff**

**Alias**

**Party Attorney**
- Attorney
- Lagosh, Jr., Esq., Daniel
- Bar Code
- 647597
- Address
- Lewis, Brisbois, Bisgaard and Smith, LLP
  One International Place Suite 305
  Boston, MA  02110
- Phone Number
- (857)313-3934
- Attorney
- Walton, Esq., Kenneth B
- Bar Code
- 562174
- Address
- Lewis Brisbois Bisgaard and Smith LLP
  One International Place
  Suite 350
  Boston, MA  02110
- Phone Number
- (857)313-3936

**More Party Information**

**Pets Doc Veterinary Clinic**
**- Defendant**

**Alias**

Party Attorney

**More Party Information**

### Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 07/12/2023 | 10/10/2023 | 90 | |
| Answer | 07/12/2023 | 11/09/2023 | 120 | |
| Rule 12/19/20 Served By | 07/12/2023 | 11/09/2023 | 120 | |
| Rule 12/19/20 Filed By | 07/12/2023 | 12/11/2023 | 152 | |
| Rule 12/19/20 Heard By | 07/12/2023 | 01/08/2024 | 180 | |

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Rule 15 Served By | 07/12/2023 | 09/04/2024 | 420 | |
| Rule 15 Filed By | 07/12/2023 | 10/04/2024 | 450 | |
| Rule 15 Heard By | 07/12/2023 | 10/04/2024 | 450 | |
| Discovery | 07/12/2023 | 07/01/2025 | 720 | |
| Rule 56 Served By | 07/12/2023 | 07/31/2025 | 750 | |
| Rule 56 Filed By | 07/12/2023 | 09/01/2025 | 782 | |
| Final Pre-Trial Conference | 07/12/2023 | 12/29/2025 | 901 | |
| Judgment | 07/12/2023 | 07/13/2026 | 1097 | |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 07/12/2023 | Complaint electronically filed. | 1 | Image |
| 07/12/2023 | Civil action cover sheet filed. | 2 | Image |
| 07/13/2023 | Case assigned to: DCM Track A - Average was added on 07/13/2023 | | |
| 07/14/2023 | Notice of 93A complaint sent to Attorney General | | Image |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Pending | | |

For Land Court only: Name search is currently unavailable. Case type and case number searches are available. For a Land Court name search, contact the Land Court Recorder's Office at 617-788-7470. We apologize for the inconvenience ✖



Kenneth B. Walton
One International Place, Suite 350
Boston, Massachusetts 02110
Ken.Walton@lewisbrisbois.com
Direct: 857.313.3936

August 24, 2023

**SENT VIA CERTIFIED MAIL**
<u>RETURN RECEIPT REQUESTED</u>
7016 3010 0000 5391 1351
Attn: Kevin Watkins, DVM
Pets Doc Veterinary Clinic
3048 Clifty Drive
Madison, IN 47250

RE:   Rauhaus Freedenfeld & Associates, LLP  v.
Pet Docs Veterinary Clinic et al.

Civil Action No. – 2384 CV 01584

Dear Mr. Watkins:

Please be advised this office represents the Plaintiff, Rauhaus Freedenfeld & Associates, LLP ("RFA"), in the above-entitled civil action currently pending in Suffolk Superior Court. Pursuant to M.G.L. c. 223A, §6 (Massachusetts "Long-Arm Statute"), service is hereby made upon you as the Registered Agent for the Defendant, Pets Doc Veterinary Clinic ("Pets Doc").

Accordingly, enclosed herewith please find a copy of the following:

1. Summons – Pets Doc Veterinary Clinic;

2. Summons – Kevin Watkins, DVM;

3. Verified Complaint Dated July 12, 2023 With <u>Exhibits A and B</u>;

4. Civil Action Cover Sheet With Attachment; and

5. Civil Tracking Order.

Kevin Watkins, DVM
August 24, 2023
Page 2

Very truly yours,

Kenneth B. Walton of
LEWIS BRISBOIS BISGAARD & SMITH LLP

Enclosures

cc:     Warren Freedenfeld, AIA
        Daniel Lagosh, Jr., Esq.

128415895.1

| Summons | CIVIL DOCKET NO | **Trial Court of Massachusetts**  |
| --- | --- | --- |

**The Superior Court**

CASE NAME

Rauhaus Freedenfeld &
Associates, LLP

Plaintiff(s)

vs

Pets DOC veterinary Clinic and
Kevin Watkins, DVM

Defendant(s)

Suffolk   Clerk of Courts
County

COURT NAME & ADDRESS

Suffolk County
Superior Court
3 Pemberton Square
Boston, MA 02108

THIS SUMMONS IS DIRECTED TO Pets DOC Veterinary Clinic (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the                    Court

### YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint You will also lose the opportunity to tell your side of the story You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented) You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business,                    Court
                                   (address), by mail, in person, or electronically through
         the web portal www.eFileMA com if the Complaint was e-filed through that portal  **AND**

   b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address

**3 What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses. called affirmative defenses. must be stated in your Answer or you may lose your right to use them in Court If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit If you want to have your case heard by a jury. you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Rule 12 of the Massachusetts Rules of Civil Procedure. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ . 20 ____ (Seal)

Clerk          Thomas H. Driscoll, Jr.

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s)

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

Dated: _____

                                        Signature _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _____

| Summons | CIVIL DOCKET NO | Trial Court of Massachusetts<br>The Superior Court  |
|---|---|---|

CASE NAME

Rauhaus Freedenfeld &
Associates, LLP  vs  Plaintiff(s)
Pets Doc Veterinary Clinic and
Kevin Watkins, DVM  Defendant(s)

Suffolk    Clerk of Courts
County

COURT NAME & ADDRESS

Suffolk County
Superior Court
3 Pemberton Square
Boston, MA 02108

THIS SUMMONS IS DIRECTED TO **Kevin Watkins, DVM** (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the            Court

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint You will also lose the opportunity to tell your side of the story  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff  **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented)  You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,            Court

(address) by mail, in person, or electronically through the web portal www eFileMA com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint  Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court  If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at

www.mass.gov/law-library/massachusetts-superior-court-rules

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp

5. **Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. _Heidi E. Brieger_____ , Chief Justice on _____ .20____ (Seal)

Clerk            Thomas H. Driscoll, Jr.

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure)

_____

_____

_____

Dated _____              Signature _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date _____

rev 7/2022

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.**

|  |  |
|---|---|
| RAUHAUS FREEDENFELD & ASSOCIATES, LLP | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| PETS DOC VETERINARY CLINIC And KEVIN WATKINS, DVM | ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT

1.      The Plaintiff, Rauhaus Freedenfeld & Associates, LLP ("RFA"), is a duly registered Massachusetts limited liability partnership with a principal place of business located at 97 Broadway, Boston, Massachusetts.

2.      The Defendant, Pets Doc Veterinary Clinic ("Pets Doc"), is, upon information and belief, a company with a principal place of business located at 3048 Clifty Drive, Madison, Indiana.

3.      The Defendant, Kevin Watkins, DVM ("Watkins" or "Owner"), is an individual who, upon information and belief, resides at 804 East First Street, Madison, Indiana.

## FACTS COMMON TO ALL COUNTS

4.      RFA and Watkins entered into that certain Abbreviated Form of Agreement Between Owner and Architect dated September 12, 2018 ("Agreement") wherein RFA was to provide architectural and engineering services related to the interior renovation of an existing building into a veterinary hospital located at 801 West Main Street in Madison, Indiana ("Project"). A true and accurate copy of the Agreement is attached hereto and marked as **Exhibit A**.

93633046.1

Case Filed 7/13/2023 4:30 PM
Superior Court - Suffolk
Docket Number

5.    Watkins executed the Agreement as Owner in his individual capacity on behalf of Pets Doc.

6.    Pursuant to Article 11.2.1 of the Agreement, RFA was to receive $12.00 per square-foot for its base fee for its architectural services on the Project.

7.    RFA confirmed in writing to Pets Doc and Watkins that the Project was budgeted to be around $980,000.00.

8.    Throughout the course of the Project, RFA engaged in Project Programming and drafted Schematic Design & Construction Documents.

9.    RFA complied with all requests that were submitted and approved by the Owner in writing.

10.    During the development phase of the Project, RFA made a significant number of changes at no cost to the Owner in order to get the Project within its budget.

11.    Pet Docs and Watkins were extremely satisfied with RFA's performance on the Project and RFA was able to meet the Owner's budget.

12.    The Owner retained a local Contractor who was already onboard and ready to begin construction.

13.    The Project was destined to be an incredible success, both financially and personally for Watkins and Pets Doc.

14.    Upon information and belief, just prior to the start of construction, the Owner became involved in personal issues at home with his wife, who was also the Business Manager for Pets Doc.

15.    The Project was ultimately terminated by Watkins and Pets Doc.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

16.     The Owner's termination of the Project was not related to the architectural and engineering services provided by RFA which were completed in a timely manner and complied with the applicable professional standard of care in all respects.

17.     Subsequent to the completion of RFA's scope of services on the Project, the Owner began to pay RFA's invoices on a monthly basis.

18.     The Owner's last payment was April 5, 2021.

19.     RFA repeatedly sought payment for the outstanding balance from Pets Doc and Owner but was unsuccessful.

20.     The current outstanding balance owed to RFA through June 30, 2023 is $199,220.49. A copy of Invoice #12471 is attached hereto and marked as **Exhibit B**. This figure includes RFA's architectural fees and reimbursable expenses in accordance with the Agreement.

21.     On September 17, 2021, counsel for RFA contacted counsel for Pets Doc and Owner, demanding Mediation in person pursuant to Article 12.9.1 of the Agreement.

22.     On October 21, 2021, Counsel for RFA sent a written Mediation Demand to counsel for Pets Doc and Watkins pursuant to Article 12.9.2 of the Agreement.

23.     RFA's counsel requested a call from counsel for Pets Doc and Watkins on November 12, 2021 to discuss the matter.

24.     RFA's counsel again reached out to counsel for Pets Doc and Watkins on November 24, 2021 to discuss the matter on Monday, November 29, 2021, but counsel for Pets Doc and Watkins was "booked up".

25.     RFA's counsel eventually spoke with counsel for Pets Doc and Watkins on Thursday, December 2, 2021 regarding mediation and settlement.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

26.     On January 29, 2022, RFA's counsel followed up with counsel for Pets Doc and Watkins with regard to a larger settlement offer, and again on March 10, 2022 without any response.

27.     On May 1, 2022, RFA's counsel sent another email to counsel for Pets Doc and Watkins confirming the Owner's refusal to mediate despite multiple demands and/or in the alternative, to tender a reasonable settlement offer.

28.     Approximately six (6) months later the parties eventually agreed to mediate the case on November 14, 2022 and engaged Attorney Walter McDonough, Esq., ("McDonough") from ELK Consulting Services, LLC to act as the mediator.

29.     On November 9, 2022, five (5) days before the scheduled mediation, counsel for Watkins confirmed with McDonough that new counsel, Robert Meltzer, Esq. ("Meltzer"), will be representing him going forward and that the Owner is not prepared to mediate the case on November 14, 2022, a date that was previously scheduled and agreed upon by all parties.

30.     As a result of the last minute cancellation by new counsel for Watkins, counsel for RFA, in conjunction with McDonough, proposed multiple new dates for mediation in December 2022 and January 2023.

31.     RFA was ready and available to mediate the case on January 12, 2023 and January 13, 2023.

32.     Counsel for Watkins was again not available on January 12, 2023 or January 13, 2023.

33.     In order to accommodate counsel for Watkins' schedule, RFA proposed January 24, 25 and 26 of 2023.

34.     Again, January 24, 25, and 26 of 2023 did not work for counsel for Watkins and proposed February 9, 2023 with its first notice of a Counterclaim by Owner.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

35.     In light of Watkins' and Pets Doc's material breach of the Agreement and unreasonable delay in mediating the case in a timely manner, RFA filed this lawsuit against Pets Doc and Watkins.

## COUNT I
## BREACH OF CONTRACT

36.     RFA incorporates herein the allegations contained in paragraphs 1 through 35 above.

37.     RFA fully performed in accordance with the terms and conditions set forth in the Agreement.

38.     Pets Doc has breached the Agreement by not paying RFA its fees owed for professional services rendered in connection with the Project.

39.     Watkins has breached the Agreement by not paying RFA its fees owed for professional services rendered in connection with the Project.

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

40.     RFA incorporates herein the allegations contained in paragraphs 1 through 39 above.

41.     Implied in every agreement is a Covenant of Good Faith and Fair Dealing, and Pets Doc has breached the covenant by not paying RFA its fees for professional services rendered.

42.     Implied in every agreement is a Covenant of Good Faith and Fair Dealing, and Watkins has breached the covenant by not paying RFA its fees for professional services rendered.

## COUNT III
## UNJUST ENRICHMENT

43.     RFA incorporates herein the allegations contained in paragraphs 1 through 42 above.

44.     Pets Doc has been unjustly enriched by accepting and utilizing RFA's professional services for its own benefit in connection with the Project.

Date Filed 7/12/2023 4 30 PM
Superior Court - Suffolk
Docket Number

45.     Watkins has been unjustly enriched by accepting and utilizing RFA's professional services for its own benefit in connection with the Project.

## COUNT IV
## BREACH OF QUANTUM MERUIT

46.     RFA incorporates herein the allegations contained in paragraphs 1 through 45 above.

47.     Pets Doc knowingly received a significant benefit as a result of professional services rendered and performed by RFA at Pets Doc's request with the expectation of RFA being paid by Pets Doc.

48.     Watkins knowingly received a significant benefit as a result of professional services rendered and performed by RFA at Watkins' request with the expectation of RFA being paid by Watkins.

## COUNT V
## VIOLATION OF M.G.L. CHAPTER 93A

49.     RFA incorporates herein the allegations contained in paragraphs 1 through 48 above.

50.     Pets Doc has willfully and knowingly engaged in unfair and deceptive acts or practices.

51.     Watkins has willfully and knowingly engaged in unfair and deceptive acts or practices.

52.     RFA through its counsel, sent a written Mediation Demand to counsel for Pets Doc and Watkins on October 21, 2021 prior to instituting litigation.

53.     Through its counsel, Pets Doc and Watkins have refused to engage in Mediation in a reasonable and timely manner.

54.     Pets Doc and Watkins have not acted in good faith to schedule the Mediation since 2021 as evidenced by the introduction of a last minute, unsupported, and futile Counterclaim that is not based on any factual and/or legal merit.

55.     Pets Doc violated Chapter 93A and owes treble damages and attorney's fees to RFA.

Date Filed 7/12/2023 4 30 PM
Superior Court - Suffolk
Docket Number

56.   Watkins violated Chapter 93A and owes treble damages and attorney's fees to RFA.

<u>**JURY DEMAND**</u>

RFA hereby demands a trial by jury on all counts/claims so triable.

**WHEREFORE**, Plaintiff, RFA respectfully requests that this Honorable Court:

a.   Enter Judgment in favor of Plaintiff, RFA against Defendant, Pets Doc on Counts I -V of its Verified Complaint, plus Chapter 93A double or treble damages, interest, reasonable attorney's fees, statutory interest. and costs;

b.   Enter Judgment in favor of Plaintiff,  RFA against Defendant, Watkins on Counts I -V of its Verified Complaint, plus Chapter 93A double or treble damages, interest, reasonable attorney's fees, statutory interest, and costs; and

c.   Such other relief as this Honorable Court may deem just and appropriate.

Respectfully submitted,

**PLAINTIFF**

**RAUHAUS FREEDENFELD & ASSOCIATES, LLP**
By its attorneys,

Kenneth B. Walton, BBO #562174
Ken.Walton@lewisbrisbois.com
Daniel Lagosh, Jr., BBO #647597
Daniel.Lagosh@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
One International Place, 3rd Floor
Boston, MA 02110
T: (857) 313-3950
F: (857) 313-3951

Dated: July 12, 2023

93633046.1  7

Case Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## VERIFICATION

I, Warren C. Freedenfeld, AIA, Principal of Rauhaus Freedenfeld & Associates, LLP, have read the foregoing Verified Complaint and based upon personal knowledge, the statements contained therein are true and correct. As to those statements contained therein which are stated on information and belief, I believe them to be true.

Signed under the penalties of perjury the 12th day of July, 2023.

/s/ Warren C. Freedenfeld
_____
Warren C. Freedenfeld, AIA
Principal

Date Filed 7/12/2023 4.30 PM
Superior Court - Suffolk
Docket Number

# EXHIBIT A

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

T H E    A M E R I C A N    I N S T I T U T E    O F    A R C H I T E C T



*AIA Document B151*

# Abbreviated Form of Agreement Between Owner and Architect

*for Construction Projects of Limited Scope*

### 1987 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH
AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

**AGREEMENT**
made as of the             12th day of September in the year of 2018

**BETWEEN** the Owners:      Kevin Watkins, DVM
                            Pets Doc Veterinary Clinic
                            3048 Clifty Drive
                            Madison, IN 47250

and the Architect:          Rauhaus Freedenfeld & Associates, LLP
                            97 Broadway
                            Boston, MA 02116

For the following Project:   Pets Doc Veterinary Hospital

Location of Project:        801 West Main Street
                            Madison, IN 47250

Scope of Project:           Interior renovation of existing building into a veterinary hospital

The Owner and Architect agree as set forth below.

Copyright 1974, 1978, © 1987 by the American Institute of Architects. 1735 New York Avenue, N.W., Washington D.C. 20006
Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT

## ARTICLE 1
## ARCHITECT'S RESPONSIBILITIES

### 1.1 ARCHITECT'S SERVICES

**1.1.1** The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2** The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

**1.1.3** The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

## ARTICLE 2
## SCOPE OF ARCHITECT'S BASIC SERVICES

### 2.1 DEFINITION

**2.1.1** The Architect's Basic Services consist of those described under the three phases identified below, any other services identified in Article 12, and include normal structural, mechanical and electrical engineering services.

### 2.2 DESIGN PHASE

**2.2.1** The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.2** Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project, and shall submit to the Owner a preliminary estimate of Construction Cost.

### 2.3 CONSTRUCTION DOCUMENTS PHASE

**2.3.1** Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

**2.3.2** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**2.3.3** Unless provided in Article 12, the Architect, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

### 2.4 CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT

**2.4.1** The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

**2.4.2** The Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**2.4.3** Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent shall not be unreasonably withheld.

**2.4.4** The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractor is due and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contract for Construction.

**2.4.5** The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. *(More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)*

**2.4.6** The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

**2.4.7** The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.4.8** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect shall review and certify the amounts due the Contractor.

**2.4.9** The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.4.5 and on the data comprising the Contractor's Application for Payment, that the Work, to the best of the Architect's knowledge, information and

belief, has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.4.10**  The Architect shall have authority to reject Work which does not conform to the Contract Documents and will have authority to require additional inspection or testing of the Work whenever, in the Architect's reasonable opinion, it is necessary or advisable for the implementation of the intent of the Contract Documents.

**2.4.11**  The Architect shall review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.4.12**  The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if authorized or confirmed in writing by the Owner as provided in Paragraphs 3.1 and 3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

**2.4.13**  The Architect shall conduct inspections to determine the dates of Substantial Completion and final completion and shall issue a final Certificate for Payment.

**2.4.14**  The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

### ARTICLE 3
### ADDITIONAL SERVICES

**3.1**  Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in Article 12, and they shall be paid for by the Owner as provided in this Agreement. Such Additional Services shall include, in addition to those described

in Paragraphs 3.2 and 3.3, budget analysis, financial feasibility studies, planning surveys, environmental studies, measured drawings of existing conditions, coordination of separate contractors or independent consultants, coordination of construction or project managers, detailed Construction Cost estimates, quantity surveys, interior design, planning of tenant or rental spaces, inventories of materials or equipment, preparation of record drawings, and any other services not otherwise included in this Agreement under Basic Services or not customarily furnished in accordance with generally accepted architectural practice.

**3.2**  If more extensive representation at the site than is described in Subparagraph 2.4.5 is required, such additional project representation shall be provided and paid for as set forth in Articles 11 and 12.

**3.3**  As an Additional Service in connection with Change Orders and Construction Change Directives, the Architect shall prepare Drawings, Specifications and other documentation and data, evaluate Contractor's proposals, and provide any other services made necessary by such Change Orders and Construction Change Directives.

### ARTICLE 4
### OWNER'S RESPONSIBILITIES

**4.1**  The Owner shall provide full information, including a program which shall set forth the Owner's objectives, schedule, constraints, budget with reasonable contingencies, and criteria.

**4.2**  The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, a written legal description of the site and the services of geotechnical engineers or other consultants when such services are requested by the Architect.

**4.3**  The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.4**  The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by the Owner.

**4.5**  The foregoing services, information, surveys and reports shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**4.6**  Prompt written notice shall be given by the Owner to the Architect if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.7**  The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be submitted to the Architect for review and approval at least 14 days prior to execution.

Date Filed 7/12/2023 4 30 PM
Superior Court - Suffolk
Docket Number

## ARTICLE 5
## CONSTRUCTION COST

**5.1 DEFINITION**

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractor's overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

**5.1.3** Construction Cost does not include the compensation of the Architect and the Architect's consultants, the cost of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4.

**5.2 RESPONSIBILITY FOR CONSTRUCTION COST**

**5.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

**5.2.2** No fixed limit of Construction cost shall be established as a condition of this Agreement by the furnishing, proposal of establishment of a Project budget, unless a fixed limit has been agreed upon in writing and signed by the parties hereto. Fixed limits, if any, shall be increased in the amount of an increase in the Contractor Sum occurring after execution of the contract for Construction.

**5.2.3** Any Project budget or fixed limit of Construction Cost may be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.

**5.2.4** If a fixed limit of Construction Cost is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

.1 give written approval of an increase in such fixed limit;

.2 authorize rebidding or renegotiating of the project within a reasonable time;

.3 if the Project is abandoned, terminate in accordance with Paragraph 8.3; or

.4 cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

**5.2.5** If the Owner chooses to proceed under Clause 5.2.4.4. the Architect, without additional charge, shall modify the Construction Documents as necessary to comply with the fixed limit, if established as a condition of this Agreement. The modification of Contract Documents shall be the limit of the Architect's responsibility arising out of the establishment of a fixed limit. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

## ARTICLE 6
## USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing with appropriate compensation to the Architect.

**6.2** Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

## ARTICLE 7
## ARBITRATION

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**7.2** In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statues of limitations.

**7.3** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**See ARTICLE 12.9**

## ARTICLE 8
## TERMINATION. SUSPENSION OR ABANDONMENT

**8.1** This agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

8.2   If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services.

8.3   This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving written notice.

8.4   Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

8.5   If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

8.6   In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses.

8.7   Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination.

### ARTICLE 9
### MISCELLANEOUS PROVISIONS

9.1   Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect.

9.2   Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

9.3   Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

9.4   The Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers from their contractors, consultants and agents.

9.5   The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

9.6   This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

9.7   Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

9.8   The Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances

### ARTICLE 10
### PAYMENTS TO THE ARCHITECT

10.1   DIRECT PERSONNEL EXPENSE

10.1.1   Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

10.2   REIMBURSABLE EXPENSES

10.2.1   Reimbursable Expenses include expenses incurred by the Architect in the interest of the Project for:

.1   expense of transportation and living expenses in connection with out-of-town travel authorized by the Owner;

.2   long-distance communications;

.3   fees paid for securing approval of authorities having jurisdiction over the Project;

.4   reproductions;

.5   postage and handling of Drawings and Specifications;

.6   expense of overtime work requiring higher than regular rates, if authorized by the Owner;

.7   renderings and models requested by the Owner;

.8   expense of additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and Architect's consultants; and

.9   expense of computer aided design and drafting equipment time when used in connection with the Project.

---



**10.3   PAYMENTS ON ACCOUNT OF BASIC SERVICES**

**10.3.1** An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement.

**10.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service.

**10.3.3** If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11.3.2.

**10.3.4** When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project.

**10.4   PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES**

**10.4.1** Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred

**10.5   PAYMENTS WITHHELD**

**10.5.1** No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

## ARTICLE 11
## BASIS OF COMPENSATION

The Owner shall compensate the Architect as follows:

**11.1   A RETAINER OF** Four Thousand Dollars ($4,000.00) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

**11.2   BASIC COMPENSATION**

**11.2.1   FOR BASIC SERVICES,** as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:

*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

The Base Fee for Architectural Services shall be $12.00 per square foot.

Project Area: For purposes of determining the square foot area of the project, any exterior spaces that are covered, including but not limited to canopies, port cocheres, or overhangs, shall be calculated at fifty percent (50%) of the actual square foot area.

Engineering Services:
Structural, Mechanical, Plumbing and Electrical Engineering shall be billed separately at Direct Cost, in addition to the fee for Base Architectural Services.

**11.2.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:

| | | | |
|---|---|---|---|
| Project Programming: | @ | $2,500 Fixed Fee (See Note #1 and Note #2) | |
| Schematic Design: | @ | 30% of Total Base Fee | = $ 3.60 / SF |
| Construction Documents: | @ | 55% of Total Base Fee | = $ 6.60 / SF |
| Bidding & Contract Negotiations | @ | 5% of Total Base Fee | = $ 0.60 / SF |
| Construction Administration: | @ | 10% of Total Base Fee | = $ 1.20 / SF |
| Total Architectural Services: | @ | 100% of Total Base Fee | = $12.00 / SF |

Note #1 - If Programming is conducted outside the Architect's office, then the Programming Fee shall be increased by $1,000.

Note #2 - If the Project Program is more than 10,000 SF, then the Programming Fee shall be increased by $1,000.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## 11.3   COMPENSATION FOR ADDITIONAL SERVICES

**11.3.1   FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES,** as described in paragraph 3.2, compensation shall be computed as follows:

| | | |
|---|---|---|
| Principal Time | @ | $190.00 per Hour |
| Associate Time | @ | $170.00 per Hour |
| Project Manager Time | @ | $150.00 per Hour |
| Technical Drafter Time | @ | $130.00 per Hour |
| Secretarial Time | @ | $90.00 per Hour |
| Engineering or Consultant Time | @ | 1.2 x Direct Expense |

**11.3.2   FOR ADDITIONAL SERVICES OF THE ARCHITECT** provided under Article 3 or identified in Article 12, compensation shall be computed as follows:

*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*

| | | |
|---|---|---|
| Principal Time | @ | $190.00 per Hour |
| Associate Time | @ | $170.00 per Hour |
| Project Manager Time | @ | $150.00 per Hour |
| Technical Drafter Time | @ | $130.00 per Hour |
| Secretarial Time | @ | $90.00 per Hour |
| Engineering or Consultant Time | @ | 1.2 x Direct Expense |
| Principal Consultation Time | @ | $250.00 per Hour (For consultation not related to this project) |
| Color Perspective Renderings | @ | $1,600 per Rendering |

**11.3.3   FOR ADDITIONAL SERVICES OF CONSULTANTS,** including additional structural, mechanical and electrical engineering services and those provided under Article 3 or identified in Article 12 as part of Additional Services, a multiple of (1.2) times the amounts billed to the Architect for such services.

*(Identify specific types of consultants in Article 12, if required.)*

## 11.4   REIMBURSABLE EXPENSES

**11.4.1   FOR REIMBURSABLE EXPENSES,** as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of 1.2 times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

## 11.5   ADDITIONAL PROVISIONS

**11.5.1   IF THE BASIC SERVICES** covered by this Agreement have not been completed within Twelve (12) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2**   Payments are due and payable ten (10) days from the date of the Architect's invoice. Amounts unpaid thirty (30) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.

*(Insert rate of interest agreed upon.)*

The Interest Rate shall be 1.8% per month compounded.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

Date Filed 7/12/2023 4.30 PM
Superior Court - Suffolk
Docket Number

## ARTICLE 12

### OTHER CONDITIONS OR SERVICES

### 12.1   SCHEMATIC DESIGN PHASE

Once the Project Program is approved, the Schematic Design Drawings shall be developed and shall consist of Floor Plans of all levels, Exterior Elevations and a Site Plan if applicable. The Fee for Schematic Design shall be based on the Project Program approved by the Owner. If the Project Program is reduced by the Owner after Schematic Design has begun, then the required revisions to the Schematic Design Drawings shall be made as an Additional Service on an hourly basis, in addition to the initial Schematic Design Fee. If the Project Program is increased, the Schematic Design Fee shall be adjusted to reflect the additional square foot area of the Project.

### 12.2   EXISTING CONDITIONS

The Owner shall provide the Architect with Drawings of all existing conditions of the Project. The Architect shall be entitled to rely upon the accuracy and completeness of such Drawings. If the Architect must record and document existing conditions, then such work shall be considered an Additional Service and shall be provided in accordance with Article 11.3.

### 12.3   FEE FOR CONSTRUCTION ADMINISTRATION

The fee for Construction Administration shall be divided into equal weekly amounts over the period of time set aside for Construction as stipulated in the Owner and Contractor Agreement. If the Construction Period goes beyond that which is stipulated in the Owner and Contractor Agreement, then the Architect shall be compensated for each additional week of Construction in an amount equal to each previous weekly amount until such time as Final Completion of the Project is reached. Billing for Construction Administration shall occur monthly. If the Construction is phased, then the Architect's Fee for Construction Administration for each subsequent phase, after the first phase, shall be 0.15% of the Construction Cost for that phase divided into equal weekly amounts based on the Construction Period as stipulated in the Owner and Contractor Agreement.

### 12.4   SITEWORK & SITE IMPROVEMENTS

As part of the Architect's Basic Services, the Architect shall design an overall site plan, including a layout for vehicular parking and pedestrian walkways. However, Construction Documents for all site work and site improvement work, outside the limit of the building perimeter foundation walls, shall be provided as an Additional Services on an hourly basis in accordance with Article 11.3.

### 12.5   PROJECT APPROVAL APPEARANCES

One (1) appearance before local agencies that have jurisdiction over the approval of the Project is included in the Architect's fee for Basic Services. Any additional appearances shall be provided as required as an Additional Service on an hourly basis in accordance with Article 11.3.

### 12.6   JURISDICTIONAL AGENCY APPROVALS

The Architect shall utilize the Schematic Design documents for submission to those agencies having jurisdiction over the Design Review Approval Process including but not limited to Site Use Approval, Site Plan Approval, Historic District Approval, Architectural Compatibility Approval, Wetlands Approval, Conditional Use Permit and/or Variance Approval. The Architect shall attend one (1) jurisdictional agency meeting as part of the Architects Basic Services. Any additional attendance at any jurisdictional agency meetings, beyond the first meeting, shall be provided as an Additional Service on a time and expense basis. Any additional documents required, that are beyond those prepared for Schematic Design, shall be prepared as an Additional Service on a time and expense basis.

### 12.7   TAXES OR FEES ENACTED BY THE GOVERNMENT

Any taxes or fees enacted by any local, state, or the federal government, based on gross receipts of revenues, which must be paid by the Architect, shall be added to amounts due under this Agreement.

### 12.8   UNPAID ARCHITECTURAL FEES

If the Architect must expend legal fees to collect unpaid architectural fees, then such actual expenditures shall be considered a Reimbursable Expense in accordance with Article 11.4.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## 12.9   DISPUTE RESOLUTION

**12.9.1**   Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to Mediation as a condition precedent to Litigation or the institution of legal or equitable proceedings by either party.

**12.9.2**   The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by Mediation, which shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for Mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for court litigation but, in such event, Mediation shall proceed in advance of any other legal or equitable proceeding, which shall be stayed pending Mediation for a period of 60 days from the date of filing.

**12.9.3**   The parties shall share the Mediator's fee and any filing fees equally. The Mediation shall be held in the principal place of business of the Architect.

**12.9.4**   Should Mediation fail to resolve any claim, dispute of other matter in question arising out of or related to this Agreement, then court litigation may follow.

**12.9.5**   A demand for court litigation shall be made within a reasonable time after the claim; dispute or other matter in question has arisen. In no event shall the demand for court litigation be made after the date when the institution of legal or equitable proceedings, based on such claim, dispute or other matter in question, would be barred by the applicable statute of limitations.

**12.9.6**   The locale for the resolution of any dispute between the parties to this Agreement shall be in the principal place of business of the Architect.

## 12.10   CONSTRUCTION ADMINISTRATION SERVICES

If the Owner decides not to have the Architect provide normal Construction Administration Services in accordance with this Agreement, then the Owner hereby agrees to release the Architect from any and all responsibility for defects, acts, or omissions, resulting from or related to the Project, and the Owner agrees to take full and complete responsibility for any defects in construction, including but not limited to any alleged or actual issues with the Construction Documents, Drawings and/or services provided by the Architect. The Owner also agrees and covenants that it will not bring a claim or complaint of any nature whatsoever, nor file a lawsuit, nor demand for arbitration or litigation against the Architect for any actions of the Architect relating to the Project, and the Owner agrees to defend, indemnify, and hold harmless the Architect and its officers, directors, and employees from any and all loss and expense whatsoever (including attorneys' fees) incurred or that may be incurred as a result of any claim, or proceeding, or complaint whatsoever, including third party claims being instituted against the Architect arising out of or relating to the Project. In addition, the Owner waives claims for Consequential Damages against the Architect, including but not limited to loss of profits, loss of revenue, and loss of business opportunities. Owner agrees to include a similar provision in all contracts with contractors, subcontractors, vendors, and other entities involved in the Project.

## 12.11   REVISIONS TO APPROVED WORK

Revisions requested by the Owner after the completion of any previously approved portion of the Architects Services, or of the Project, shall be billed hourly as an Additional Service in accordance with Article 11.3.

## 12.12   CIRCUMSTANCES BEYOND THE CONTROL OF THE ARCHITECT

Any unusual requirements or unforeseen circumstances beyond the control of the Architect or Design Team necessitating work not specifically included in the Basic Scope of Services shall be deemed an Additional Service and shall be billed hourly in accordance with this Agreement.

## 12.13   STANDARD OF CARE

The "Standard of Care" relative to the Architect refers to the degree of care which a reasonable, prudent or careful Architect should exercise under the same or similar conditions. Accordingly, the Architect's Standard of Care is defined as the degree of skill and care ordinarily exercised by practicing design professionals performing similar services in the same locality, at the same site and under the same or similar circumstances and conditions. The Architect makes no other representations or warranties, whether express or implied, with respect to the design services rendered under this Agreement.

Date Filed 7/13/2023 4 30 PM
Superior Court - Suffolk
Docket Number

### 12.14   CONSTRUCTION COST CONTINGENCY

It is agreed and understood that no set of Construction Documents is ever 100% perfect. Therefore the Owner shall carry, within the Owner's Construction Budget, a ten percent (10%) construction cost contingency reserve fund to cover the cost of any error and/or omission that may exist in the Architect's Construction Documents. The Architect shall not be liable for any error, or accumulation of errors, that in total cost the Owner less than five percent (5%) of the total Construction Cost as indicated in the Owner and Contractor Agreement (Original Construction Cost). Under no circumstances whatsoever shall the Architect be liable for the cost of supplying or installing any item or items omitted from the Construction Documents if it costs the same amount of money that the Owner would have spent had the item been originally included within the Construction Documents. If adding an omitted item, or items, costs the Owner extra money to include the item in the Project, then the Architect shall not be liable for any such extra costs that, in total with any error(s), are less than five percent (5%) of the Original Construction Cost.

### 12.15   OWNER PROVIDED EQUIPMENT (O.P.E.)

Equipment that will be provided and/or supplied to the Project by the Owner shall be the sole responsibility of the Owner. The Owner shall transmit all information regarding Owner Provided Equipment (O.P.E.), whether existing or new, to the Architect including, but not limited to a photograph, dimensions, utility requirements, configuration, weight, exhaust requirements, blocking requirements, etc. If the Owner would like the Architect to obtain this information, then the required research and/or documentation, and/or procurement arrangements shall be provided by the Architect on an hourly basis as an Additional Service. Alternatively, upon the Owner's request, the Architect will refer the Owner to a Veterinary Equipment Consultant/Specialist who will be capable of providing this service as part of a total equipment delivery package.

### 12.16   COST ESTIMATES

Although the Architect may provide preliminary or concepaul cost estimates for the construction or renovation of the building based on square footage, it is understood and agreed that the Architect is not a professional cost estimator, and such conceptual cost estimates may vary considerably from the actual construction cost. Should the Owner request, in writing, a more detailed and reliable professional cost estimate, then such professional cost estimate shall be provided as an Additional Service by an independent professional cost estimator or by a licensed construction contractor. As an Additional Service, the Architect shall assist the Owner in obtaining such professional cost estimate.

### 12.17   VALUE ENGINEERING (VE)

The Architect's Construction Documents shall include materials and/or systems which, in the Architect's professional judgment, are most appropriate for the Owner's needs, goals, and objectives. Value Engineering is a process utilized to reduce the construction cost by replacing or eliminating selected materials and/or systems drawn or specified by the Architect. It is understood and agreed that the Owner shall assume full and complete responsibility for any problems that may arise as a result of Value Engineering, even though the Architect may agree to make such changes in materials and/or systems originally specified by the Architect.

### 12.18   LIMITATION OF LIABILITY (LOL)

The total liability of the Architect to the Owner and to anyone claiming liability through the Owner, shall be limited to the available limits of the Architect's Professional Liability Insurance Policy or the total Architect's fee, whichever is less.

### 12.19   CREDITS TO THE ARCHITECT

The Owner agrees to credit the Architect, as the "Project Architect", in all news releases, marketing publications, advertisements, etc. used for fundraising, merchandising and/or general promotional purposes. During construction, the Owner agrees to permit the Architect to erect a sign indicating the name of the Architect on the Project site.

### 12.20   PHOTOGRAPHY

The Owner agrees to allow and enable the Architect to photograph any portion of the Project, both during construction and after completion of the Project. After completion of the Project, and/or after the Owner takes occupancy, the Owner shall make provisions for the Architect to enter the building to take photographs at times and/or on days in which the building may normally be closed for business. The Architect shall be entitled to use such photography for Marketing and Promotional purposes.

Date Filed 7/10/2023 4.30 PM
Superior Court - Suffolk
Docket Number

### 12.21   LEED CERTIFICATION

If the Owner's program includes any level of LEED® certification for the Project, Green Building Rating System and other similar environmental guidelines (collectively "LEED"), then the Owner recognizes that the achievement of such certification is subject to third parties over whom the Architect has no control, and may require the cooperation of the Owner, the Contractor and others. The Owner acknowledges and understands LEED is subject to various and possibly contradictory interpretations. Therefore, the parties agree that if LEED certification is a stated goal of the Owner, the Architect shall use reasonable care in its design to achieve the same, but makes no warranty or guarantee that the Project, when completed, will actually achieve LEED certification.

In addition, the Owner's acknowledged desire to achieve LEED may impact the available design and product options and may impact the overall cost, schedule and performance. Owner accepts these potential impacts in the recognition of the importance it has placed on the value of a LEED building. In addition, from time to time, Architect may request Owner to sign a "Client Waiver and Informed Consent to use Experimental Green Products".

LEED certification services shall be considered an Additional Service of the Architect.

### 12.22   ENERGY GOALS

If the Owner's program includes goals or requirements for Project energy usage, the Owner agrees to confirm the energy goals and usage in writing to the Architect. The Owner recognizes that the achievement of such goals or requirements is subject to operational and maintenance activities and decisions over which the Architect has no control. Furthermore, continued LEED compliance may involve factors beyond the control of the Architect including, but not limited to, the Owners' use and operation of the completed project. Therefore, the parties agree that the Architect shall use reasonable care in its design to achieve the energy usage goals or requirements, but makes no warranty or guarantee regarding actual energy usage.

### 12.23   ENERGY TAX CREDITS

If the Owner's program includes goals to qualify for energy related tax credits, deductions, incentives, etc., the Owner recognizes that qualifying for such goals is subject to certification or decisions by third parties over whom the Architect has no control. Therefore, the parties agree that the Architect shall use reasonable care in its design to achieve such goals, but makes no warranty or guarantee regarding qualification.

### 12.24 ELECTRONIC TRANSMISSION OF DOCUMENTS

The Owner recognizes that data, plans, specifications, reports, documents or other information recorded on or transmitted as electronic media are subject to undetectable alteration, either intentional or unintentional due to, among other causes, transmission, conversion, media degradation, software error, or human alteration. Accordingly, the electronic documents provided to the Owner are for informational purposes only and are not intended as an end-product. The Architect makes no warranties, either expressed or implied, regarding the fitness or suitability of any electronic documents. Accordingly, the Owner agrees to waive any and all claims against the Architect and the Architect's consultants relating in any way to the unauthorized use, reuse or alteration of any electronic documents. The Owner agrees to waive any and all claims against the Architect and to defend, indemnify and hold the Architect harmless from and against any and all claims, losses, liabilities and damages arising out of or resulting from the unauthorized use, reuse or alteration of the Architect's designs, drawings and/or specifications. The Owner shall remove the Architect's logo and/or markings on any altered designs, drawings and/or specifications that would identify the Architect as the author of the altered designs, drawings and/or specifications.

This Agreement entered into as of the day and year first written above.

OWNER:

_(Signature)_ Kevin Watkins, DVM

ARCHITECT:
Rauhaus Freedenfeld & Associates, LLP

_(Signature)_ Warren Freedenfeld, AIA, Principal

_(Signature)_ Richard Rauh, AIA, Principal

# EXHIBIT B



rauhaus freedenfeld & associates

East Coast Office
97 Broadway, Boston, MA 02116
T 617.338.0050 | F 617.426.2557

West Coast Office
23101 Moulton Pkwy #105, Laguna Hills, CA
T 949.716.8899 | F 949.716.9959

30 June 2023

Invoice #12471

Kevin Watkins, DVM
Pets Doc Veterinary Clinic
3048 Clifty Drive
Madison, IN 47250

**Re: Pets Doc Veterinary Hospital**

Project #1817

### STATEMENT OF PROFESSIONAL SERVICES RENDERED
Period: 01 JUN 23 - 30 JUN 23

#### ARCHITECTUAL FEE BREAKDOWN

| | | | | | |
|---|---|---|---|---|---|
| Project Programming | @ | | Fixed Fee | = $ | 2,500.00 |
| Schematic Design | @ | 30% | of Base Fee | = $ | 38,113.20 |
| Construction Documents | @ | 55% | of Base Fee | = $ | 69,874.20 |
| Bidding & Contract Negotiations | @ | 5% | of Base Fee | = $ | 6,352.20 |
| Construction Administration | @ | 10% | of Base Fee | = $ | 12,704.40 |
| | | 100% | of Base Fee | = $ | 129,544.00 |

#### ARCHITECTUAL SERVICES COMPLETED

| | | | | | |
|---|---|---|---|---|---|
| Project Programming | @ | 100% | Complete | = $ | 2,500.00 |
| Schematic Design | @ | 100% | Complete | = $ | 38,113.20 |
| Construction Documents | @ | 100% | Complete | = $ | 69,874.20 |
| Bidding & Contract Negotiations | @ | 90% | Complete | = $ | 5,716.98 |
| Construction Administration | @ | 0 Weeks | Complete | = $ | 0.00 |
| Total Billed to Date | | | | = $ | 116,204.38 |
| Total Previously Billed | | | | = $ | -116,204.38 |

| Total Professional Services Billed This Invoice | = $ | 0.00 |
|---|---|---|

#### INTEREST EXPENSE

| Interest Expense @ 1.8% per month on $195,697.93 | = $ | 3,522.56 |
|---|---|---|

| Total Interest Expense Billed This Invoice | = $ | 3,522.56 |
|---|---|---|

#### AMOUNT DUE THIS INVOICE

| | = $ | 3,522.56 |
|---|---|---|

| Amount Still Due from Previous Invoices | = $ | 195,697.93 |
|---|---|---|

#### TOTAL AMOUNT DUE

| | = $ | 199,220.49 |
|---|---|---|

Remittance is due within ten (10) days of billing. Thank you.
Unpaid amounts remaining after thirty (30) days are subject to 1.8% interest per month.

cc:  Kenneth Walton, Esq. - E: Ken.Walton@Lewisbrisbois.com
     Daniel Lagosh, Esq. - E: Daniel.Lagosh@lewisbrisbois.com
     Robert Meltzer, Esq. - E: r.meltzer@mountainstateslawgroup.com

Date Filed 7/12/2023 4 30 PM
Superior Court - Suffolk
Docket Number

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff Rauhaus, Freedenfeld & Associates LLP | Defendant |
|---|---|
| ADDRESS 97 Broadway | ADDRESS Pets Doc Veterinary Clinic - 3048 Clifty Drive. |
| Boston MA 02116 | Madison, IN 47250 / Kevin Watkins DVM - 804 East First Street |
| | Madison, IN 47250 |
| Plaintiff Attorney: Kenneth B. Walton | Defendant Attorney: Robert Meltzer |
| ADDRESS Lewis, Brisbois, Bisgaard & Smith. LLP | ADDRESS Mountain States Law Group |
| One International Place, 3rd Flr. | 33 Bradford Street, Office 19 |
| Boston MA 02110 | Concord MA 01742 |
| BBO 562174 | BBO 564745 |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A12 | Construction Dispute | A | ☒ YES ☐ NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES ☐ NO | ☐ YES ☒ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

#### TORT CLAIMS

A Documented medical expenses to date

    1. Total hospital expenses

    2. Total doctor expenses

    3. Total chiropractic expenses

    4. Total physical therapy expenses

    5 Total other expenses (describe below)

        Subtotal (1-5):    $0.00

B. Documented lost wages and compensation to date

C. Documented property damages to date

D Reasonably anticipated future medical and hospital expenses

E Reasonably anticipated lost wages

F. Other documented items of damages (describe below)

        TOTAL (A-F)    $0.00

G Briefly describe plaintiff's injury, including the nature and extent of the injury.

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | | Amount |
|---|---|---|---|
| 1 | See Attachment | In excess | $199,200.49 |
| | | Total | $199,200 49 |

| Signature of Attorney/Self-Represented Plaintiff· X | Date. | July 12, 2023 |
|---|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1 18 Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution

| Signature of Attorney  X | Date: | July 12, 2023 |
|---|---|---|

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | |
|---|---|
| AA1 Contract Action involving Commonwealth Municipality, MBTA, etc | (A) |
| AB1 Tortious Action involving Commonwealth Municipality, MBTA, etc | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc | (A) |
| AD1 Equity Action involving Commonwealth Municipality, etc | (A) |
| AE1 Administrative Action involving Commonwealth Municipality, MBTA etc | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M R C P 8 1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (F) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity etc | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA)

‡ Choose this case type if ANY party is an incarcerated party. UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97)

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts etc | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249 § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93 § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93 § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c. 12 § 11H | (X) |
| E24 Appeal from District Court Commitment, G.L. c. 123 § 9(b) | (X) |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c. 112 § 12S | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

Date Filed 7/12/2023 4:30 PM
Superior Court - Suffolk
Docket Number

## ATTACHMENT

Plaintiff and Defendants entered into a written agreement to provide architectural and engineering services related to the interior renovation of an existing building into a veterinary hospital located in Madison, Indiana. Despite demand, Defendants have refused to pay Plaintiff for its professional and engineering services rendered on the Project.

Count I – Breach of Contract

Count II – Breach of Covenant of Good Faith and Fair Dealing

Count III – Unjust Enrichment

Count IV – Breach of Quantum Meruit

Count V – Violation of M.G.L. Chapter 93A

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2384CV01584 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME Reuhaus Freedenfeld & Associates, Llp vs. Pets Doc Veterinary Clinic | | John E. Powers III, Acting Clerk of Court Suffolk County Civil |
| TO Daniel Lagosh, Jr., Esq. Lewis, Brisbois, Bisgaard and Smith, LLP One International Place   Suite 305 Boston, MA 02110 | | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                    DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 10/10/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 11/09/2023 | |
| All motions under MRCP 12, 19, and 20 | 11/09/2023 | 12/11/2023 | 01/08/2024 |
| All motions under MRCP 15 | 09/04/2024 | 10/04/2024 | 10/04/2024 |
| All discovery requests and depositions served and non-expert depositions completed | 07/01/2025 | | |
| All motions under MRCP 56 | 07/31/2025 | 09/01/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/29/2025 |
| Case shall be resolved and judgment shall issue by | | | 07/13/2026 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 08/16/2023 | ASSISTANT CLERK | PHONE (617)788-8172 |
|---|---|---|

Date/Time Printed: 08-16-2023 14:59:20